GEORGE VERNON *et al.*, Plaintiffs-Appellants, v. JERRY SCHUSTER, d/b/a Diversey Heating and Plumbing, Defendant-Appellee.

First District (4th Division)    No. 1—95—4380

Opinion filed December 19, 1996.

858

George Vernon, of Leng, Stowell, Friedman & Vernon, of Chicago, for appellants.

William L. Barr and Robert M. Moye, both of Chicago, for appellee.

JUSTICE CERDA delivered the opinion of the court:
Plaintiffs, George Vernon and Nancy K. Baker, appeal from the

dismissal of their first amended complaint against defendant, Jerry Schuster, doing business as Diversey Heating and Plumbing (Diversey Heating), pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1994)). We reverse and remand.

## I. Facts

Plaintiffs brought a count for negligence (count I), two counts for breach of contract (counts II and IV), and a count for breach of warranty (count III) in their first amended complaint, which alleged that the plaintiffs owned a building located at 953 W. Webster, Chicago, Illinois. Diversey Heating was a sole proprietorship previously operated by James Schuster. Diversey Heating was in the business of selling, installing, and servicing heating and plumbing systems. Beginning on October 20, 1993, Diversey Heating was operated by defendant; before that date, Diversey Heating was operated by defendant's father, James Schuster. James Schuster died on October 20, 1993.

Plaintiffs further alleged that in 1989 plaintiffs contracted with Diversey Heating to replace the boiler in the Webster building. Diversey Heating warranted for 10 years the "cast iron sextions [*sic*]" of the boiler against cracking. In the course of installing the boiler, an employee of Diversey Heating sealed the boiler's blow-down valve with a pipe in a manner that prevented the valve from draining water from the boiler. In late October or early November 1993, defendant told Vernon that James Schuster had died and that Diversey Heating would perform preseason service on the boiler. In February 1994, the boiler stopped heating. Defendant told plaintiffs that the boiler could not be repaired and that Diversey Heating would not honor the warranty.

Plaintiffs further alleged that on James Schuster's death, defendant succeeded to the assets, rights, and obligations of Diversey Heating, that defendant continued to do business under the name of Diversey Heating, and that defendant received the benefits of the goodwill associated with the name of Diversey Heating. Jerry Schuster, doing business as Diversey Heating, allegedly was a continuation of James Schuster, doing business as Diversey Heating, and was a successor to the obligations of Diversey Heating.

Count II alleged that Diversey Heating breached its contract by failing to competently service the boiler in early November 1993. Count IV alleged that Diversey Heating breached its contract to install and service the boiler.

Defendant filed a motion to strike and dismiss the first amended complaint pursuant to section 2—615 of the Code of Civil Procedure

(735 ILCS 5/2—615 (West 1994)). Defendant argued that Diversey Heating was not a legal entity and was not a party to the case.

Defendant's prior motion to dismiss the original complaint was supported by the affidavit of defendant, who swore that he had owned Diversey Heating as a sole proprietorship since his father's death on October 20, 1993. Prior to that date, he was his father's employee. He did not do business as Diversey Heating prior to his father's death. At all times alleged in plaintiffs' complaint, defendant's business did not exist. Defendant did not state whether he purchased the assets of his father's business or inherited them.

The court dismissed counts I, III, and IV and denied the motion to dismiss count II, finding that count II was limited to events occurring after the death of James Schuster on October 20, 1993. The trial court also found that there was no just reason to delay an appeal.

Plaintiffs appealed from the dismissal of counts III for breach of warranty and IV for breach of contract.

## II. Discussion

Plaintiffs argue on appeal that (1) whether defendant is the successor to his father's business is a question of fact that should not be resolved on a section 2—615 motion to dismiss; and (2) the obligation of a business is binding on the business's successor.

■ In reviewing a motion to dismiss, the pertinent inquiry is whether plaintiff has alleged sufficient facts in the complaint that, if proved, would entitle plaintiff to relief. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 194, 652 N.E.2d 267 (1995). As we review the sufficiency of the complaint, all well-pleaded facts and all reasonable inferences from them are taken as true. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 115, 660 N.E.2d 863 (1995). Our review is *de novo. Dace International, Inc. v. Apple Computer, Inc.*, 275 Ill. App. 3d 234, 237, 655 N.E.2d 974 (1995).

■ There is a general rule that, when a corporation sells its assets to another corporation, the seller's liabilities do not become the liabilities of the successor corporation absent an agreement. *Steel Co. v. Morgan Marshall Industries, Inc.*, 278 Ill. App. 3d 241, 247, 622 N.E.2d 595 (1996). The exceptions to this general rule are when there is an express or implied agreement to assume liabilities, when the transaction amounts to a consolidation or a merger of the purchaser or the seller corporation, when the transaction is for the fraudulent purpose of escaping liability for the seller's obligations, or when the purchaser is merely the continuation of the seller. *Steel Co.*, 278 Ill. App. 3d at 247-48.

■ The rationale for the continuation exception is that the

corporation has reorganized and therefore has simply "put on a new coat." *Nilsson v. Continental Machine Manufacturing Co.*, 251 Ill. App. 3d 415, 418, 621 N.E.2d 1032 (1993). In determining whether there is a continuation, the factors to be considered include the timing between the dissolution of the former entity and the incorporation of the later entity, the overlap of ownership interest, and the overlap of corporate management. *Kaeser & Blair, Inc. v. Willens*, 845 F. Supp. 1228, 1233 (N.D. Ill. 1993).

There is no statutory scheme in Illinois by which a sole proprietorship is organized into a legal entity, in comparison to partnerships (805 ILCS 205/1 *et seq.* (West 1994)) or corporations (*e.g.*, 805 ILCS 5/1.01 *et seq.* (West 1994)). A sole proprietorship is not a legal entity separate from the owner. *Patterson v. V&M Auto Body*, 63 Ohio St. 3d 573, 574-75, 589 N.E.2d 1306, 1308 (1992); see also *Flora v. Home Federal Savings & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir. 1982) (a sole proprietorship and its owner are a single legal entity for purposes of the Illinois Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*)).

Plaintiffs argue that they have alleged defendant's continuation of his father's business and that defendant should be liable for the warranty obligation incurred by defendant's predecessor. There is no Illinois authority for plaintiffs' position that a sole proprietorship that continues the business of a former sole proprietorship, under the same name but under the ownership of a new proprietor, assumes the liabilities of the prior sole proprietorship. An Illinois case that involved the transfer of assets from a noncorporate business entity analyzed whether the continuation exception was applicable but did not discuss the appropriateness of applying the exception to noncorporate businesses. *M.I.G. Investments, Inc. v. Marsala*, 92 Ill. App. 3d 400, 404, 414 N.E.2d 1381 (1981) (partnership sold assets to a business that was apparently a sole proprietorship).

The issue raised is whether a terminated sole proprietorship can be continued by another sole proprietor after the first sole proprietor dies. There are a few cases from other jurisdictions that have concluded that a successor sole proprietorship cannot be liable for the debts of a prior sole proprietorship.

In *Lemire v. Garrard Drugs*, 95 Mich. App. 520, 291 N.W.2d 103 (1980), the assets of a drugstore were purchased, the seller ceased operation after the sale, and the new business retained the store employees and general business operations. The name of the store was retained for only a very short period, and defendant did not hold itself out as a continuation of the prior drugstore. The court distinguished a sole proprietorship from a corporation in that a

corporation could alter its form while maintaining the business enterprise, due to its status as an artificial legal entity. *Lemire*, 95 Mich. App. at 525, 291 N.W.2d at 105. In contrast, the sale of a sole proprietorship did not involve a situation where the selling entity was immediately dissolved or where the management and control remained the same with only the form of the business altered. *Lemire*, 95 Mich. App. at 525, 291 N.W.2d at 105. The successor liability doctrine had not been applied in a noncorporate situation. *Lemire*, 95 Mich. App. at 525, 291 N.W.2d at 105. The court declined to impute successor liability upon the drugstore that had purchased the prior drugstore's assets. *Lemire*, 95 Mich. App. at 525, 291 N.W.2d at 105.

In *Elizabeth Gamble Deaconess Home Ass'n v. Turner Construction Co.*, 38 Ohio Misc. 2d 17, 526 N.E.2d 1368 (1986), architects were sued in connection with the construction of a garage that deteriorated. The various defendants apparently were made up of fathers and sons, the businesses of the sons succeeding those of their fathers: one sole proprietorship was succeeded by another sole proprietorship, which was succeeded by a corporation.

The *Elizabeth Gamble* court considered the issue whether defendants were liable as the continuation of the business entity that originally contracted for the provision of architectural services at issue. The court distinguished the corporation, which existed by virtue of a legal fiction, from an individual: the corporate existence continued beyond the life of any shareholder, director, or employee while an individual had no existence upon death. *Elizabeth Gamble*, 38 Ohio Misc. 2d at 20, 526 N.E.2d at 1372. The sole proprietor, once deceased, could not be the same unit, even fictionally, as his son who became a sole proprietor after the death of his father. *Elizabeth Gamble*, 38 Ohio Misc. 2d at 21, 526 N.E.2d at 1372. The father, the son, and the corporation, succeeding one another, could not be the same entity. *Elizabeth Gamble*, 38 Ohio Misc. 2d at 21, 526 N.E.2d at 1372.

■ The cases cited above from other jurisdictions that involved a transfer from one sole proprietorship to another sole proprietorship implicitly or explicitly recognized that the continuity of ownership requirement cannot be applied to sole proprietorships. We believe, however, that the continuation exception applies with equal force to successive noncorporate business entities. See *M.I.G. Investments, Inc. v. Marsala*, 92 Ill. App. 3d 400, 404, 414 N.E.2d 1381 (1981) (applying general rule and exceptions to noncorporate entity).

We look to the complaint to determine whether, accepting all well-pleaded facts as true, plaintiff has alleged "a continuation of the seller" sufficient to survive defendant's motion to dismiss. Counts III and IV allege:

"18. On Jim Schuster's death Jerry Schuster succeeded to the assets, rights and obligations of Diversey Heating and Plumbing, continued to do business under the name of Diversey Heating and Plumbing and received the benefits of the good will associated with the name of Diversey Heating and Plumbing."

If such a continuation of the business can be proved, then plaintiff can prevail.

There are a number of issues that plaintiff must address. Did the son merely take the physical assets by inheritance? Did the son purchase the assets from the estate, if there was one? Could a claim have been made against the estate of the father? If the assets were purchased from an estate, did the purchaser succeed to only possession of the personal property and not to the business' obligations? Was the new business the beneficiary of other rights that existed before the father's death? Upon the father's death, was there a winding up of the business and was a new business entity organized? What was the actual business relationship between father and son prior to the father's death? Were the assets of Diversey Heating placed on the defendant's books at their existing account balances?

It is certainly possible that all of these questions will be answered in a manner that would show that this is not a continuation of the old business but, rather, a new business venture merely using some of the property of the old business that was acquired by the son in such a manner that he would not be liable for obligations for which the father was liable.

Plaintiffs' complaint, at least as to counts III and IV, alleges sufficient facts, which if proven, would establish that defendant's "Diversey Heating" was a "mere continuation" of "Diversey Heating" prior to 1993 that assumed its liabilities. This is particularly true in light of the trial court's severe limitation on plaintiffs' requests for discovery. Accordingly, we reverse the trial court's order of dismissal.

The judgment of the trial court is reversed, and the cause is remanded.

Reversed and remanded.

GREIMAN and GALLAGHER, JJ., concur.